

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00080-CV
_____


M.K. JACKSON INVESTMENTS, INC., DONNA NEAL JACKSON
AND JERAMY HEATH JACKSON, Appellants

V.

RICHARD ROLAND, Appellee



On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 94527



Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

Richard Roland secured a no-answer default judgment against M.K. Jackson Investments, Inc., Donna Neal Jackson, and Jeramy Heath Jackson (Appellants). After being notified of the default judgment, Appellants filed a motion for new trial, which the trial court denied. The trial court also found that Appellants' supporting affidavits for the motion for new trial contained perjury. As a result, the trial court imposed sanctions against Appellants.

On appeal, Appellants argue that defects in service of process left the trial court without jurisdiction to render a default judgment and that the trial court erred by failing to grant a new trial. Because we find that Appellants were duly served, the trial court had personal jurisdiction over them. However, we reverse the trial court's default judgment against M.K. Jackson Investments, Inc. (M.K.) because Roland was required to but failed to serve M.K. with the live petition.

Appellants also argue, and Roland conceded during oral argument, that the damages and attorney fees awarded by the trial court are not supported by sufficient evidence and that the amount of the sanctions award should be reversed. Because we agree, we reverse the damages, attorney fees, and the amount of sanctions entered against Donna and Jeramy, and we remand the matter to the trial court for further proceedings, including effectuating the parties' agreement.

## I.      Factual and Procedural Background

Roland owned property adjacent to land owned by M.K. Roland alleged that M.K. "authorized or allowed illegal burning of municipal solid waste and other construction debris on the property" and that on October 6, 2023, M.K. or its agent left a burn pit unattended, resulting

in a fire on Roland's property. According to Roland, the fire consumed his motor home, camper, windmill generator, a box truck, a pickup truck, and a Crown Victoria sedan, among other things, and caused a total of $243,200.00 in damages. As a result, Roland sued M.K. for trespass, negligence, and negligence per se[1] for failing to supervise the illegal burn pit.

Roland alleged in his petition that M.K. could be served through its registered agent, Cathy Ward, at 3414 Wesley Street, Greenville, Texas. The Hunt County District Clerk issued a citation for personal service at Ward's address, as listed in Roland's petition. On February 18, 2025, a sworn return of service shows that Ward was personally served with the citation and petition by hand delivery from a private process server, Debbie Lynn Smith, on February 17, 2025, but that Ward was served at 2721 Terrell, Greenville, Texas.

On March 28, 2025, Roland added M.K.'s directors, Donna and Jeramy, as defendants. Roland requested in his amended petition that citation be issued to Donna and Jeramy. As for M.K., the amended petition stated that "[MK] has been served via its registered agent, Cathy Ward, at her registered office address. Citation has previously been issued and served." In addition to the original causes of action for trespass, negligence, and negligence per se, Roland added a claim asserting a violation of the Texas Uniform Fraudulent Transfer Act (TUFTA). *See* TEX. BUS. & COM. CODE ANN. § 24.001–.013. Roland alleged that, after M.K. was served through Ward on February 17, M.K. filed a warranty deed gifting its property to Dakota Taylor on February 18, 2025, in an attempt to fraudulently convey the property. Roland prayed for

---

[1]Roland cited in his petition to the rules related to outdoor burning provided by Title 30, Chapter 111 of the Texas Administrative Code. *See* 30 TEX. ADMIN. CODE §§ 111.201–.221 (2025) (Tex. Comm'n on Env't Quality, Outdoor Burning).

3

actual damages, "remedies under the Tex. Bus. & Comm. [sic] Code Sec. 24.008," and attorney fees. Citation for the amended petition was issued and was personally served on Donna on March 31 and on Jeramy on April 8, respectively.

On May 7, 2025, Roland moved for default judgment because Appellants had not filed an answer to any of his claims. Roland attached the returns of service for each defendant to his motion for default judgment. At a hearing on the default judgment, Roland's counsel testified that he had "considered the fair market value for attorney's fees in this area, including the Arthur Andersen Factors,[2] as well as the Rohrmoos Factors,"[3] and that his attorney fees totaled $9,002.86.

On June 16, 2025, the trial court granted Roland's motion for no-answer default judgment. The judgment contained the trial court's finding that Appellants "were properly served" and "failed to file an answer or make an appearance within the time allowed by law." As a result, the trial court declared M.K.'s transfer of property to Taylor as void pursuant to TUFTA and entered judgment for Roland against Appellants jointly and severally for $243,200.00, post-judgment interest, and attorney fees "in the amount of $9,002.86, as allowed by Texas Business and Commerce Code Section 24.013" for the alleged fraudulent transfer of M.K.'s property.

On July 1, 2025, Appellants filed a motion for new trial to set aside the default judgment. Appellants stated in their motion that M.K. was the "record legal title owner" of the property but

---

[2]*See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[3]*See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 476 (Tex. 2019).

4

that equitable title belonged to Benny J. McDonald after the property "was sold pursuant to an executory contract" that "was not located." They further stated that the executory contract "has not been secured[] and Benny J. McDonald is now deceased."

Appellants said they did not answer the lawsuit because they "believed that the purchaser of the property would be retaining counsel . . . and that counsel would take any necessary steps to protect their interests and to represent them in this lawsuit." Appellants alleged that there was a meritorious defense to the lawsuit because the fire was started "by a tenant (Ricky Doyle) of the purchaser of the property (Benny J. McDonald)." In support of the motion for new trial, Donna filed an affidavit stating that she was the president of M.K. and that Jeramy, her son, contacted the buyer of the property and Roland's attorney. Donna represented that "[i]t was [her] understanding from th[o]se communications that Benny J. McDonald, the purchaser of the property, would be securing counsel to represent all parties in this matter." Jeramy also filed an affidavit in support of the motion for new trial which mirrored the statements made in Donna's affidavit.

Roland objected to the motion for new trial, filed a motion to strike Donna's and Jeramy's affidavits, and moved for sanctions. Roland alleged that his counsel was never contacted by Jeramy and that "McDonald died on January 7, 2024, over a year before the lawsuit was filed," which meant that Jeramy could not have contacted McDonald in 2025. Roland alleged that the affidavits were unreliable due to their "falsehoods" and rendered the motion for new trial meritless. Roland attached a copy of McDonald's death certificate showing that he died before the filing of the lawsuit, as well as affidavits from Roland's attorneys showing that

5

they were never contacted by, nor communicated with, Appellants during the pendency of the lawsuit.

After receiving the objection, Appellants amended their motion for new trial to state that Jeramy had "contacted the children of Benny J. McDonald . . . not Benny J. McDonald as originally incorrectly pled in the original Motion for New Trial." Despite affidavits from Roland's counsel, Jeramy's affidavit in support of the amended motion still averred that he had contacted Roland's attorneys. Again, Roland moved to strike the amended motion for new trial on the ground that it was untimely filed without leave of court, which prompted Appellants to file a motion for leave to file the amended motion for new trial.

The trial court set the motion for new trial for a hearing and found that Appellants could not reasonably rely on an unnamed party to answer the lawsuit on their behalf.[4] As a result, the trial court found that Appellants failed to meet the requirement to prove that their failure to answer or appear was not intentional or the result of conscious indifference.[5] Consequently, the trial court denied Appellants' motion for new trial.

Even so, the trial court set a separate hearing on Roland's motion to strike the amended affidavits and motions for sanctions. At that hearing, Jeramy admitted that, contrary to his sworn affidavits, he had not contacted Roland, Roland's attorneys, or the buyer of the property. Accordingly, the trial court found that "the affidavits in the motions for new trials contain

---

[4]Jeramy did not appear at that hearing.

[5]Appellants originally complained that the trial court erred by this finding but voluntarily withdrew this issue in their reply brief.

6

perjury" and sanctioned Jeramy "$4,694.00 for the cost to defend the false affidavits" based on Roland's counsel's representation of fees expended to disprove the affidavits.

## II. The Trial Court Had Jurisdiction Since All Parties Were Properly Served

On appeal, Appellants first argue that defects in service of process left the trial court without personal jurisdiction to render a default judgment. "Personal jurisdiction, a vital component of a valid judgment, is dependent 'upon citation issued and served in a manner provided for by law.'" *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)). "[T]rial courts lack jurisdiction over a defendant who was not properly served with process . . . ." *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020) (per curiam). "Whether a court has personal jurisdiction over a party is a question of law that we review de novo, although the court may have to resolve questions of fact." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023).

"For well over a century, this [C]ourt has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack." *WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 799 (Tex. 2021) (per curiam) (quoting *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam)). On direct attack, "[w]e indulge no presumptions in favor of valid issuance, service, or return of citation." *Spanton*, 612 S.W.3d at 316. "[F]ailure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no effect." *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam). The party relying on the return of service to support a default

7

judgment bears the burden of showing "that service is properly reflected in the record." *Primate Constr.*, 884 S.W.2d at 153.

Under Rule 107(b) of the Texas Rules of Civil Procedure, the return of service, "together with any documents to which it is attached," was required to show the following:

(1)     the cause number and case name;

(2)     the court in which the case is filed;

(3)     a description of what was served;

(4)     the date and time the process was received for service;

(5)     the person or entity served;

(6)     the address served;

(7)     the date of service or attempted service;

(8)     the manner of delivery of service or attempted service;

(9)     the name of the person who served or attempted to serve the process;

(10)    if the person named in (9) is a process server certified by the Judicial Branch Certification Commission, his or her identification number and the expiration date of his or her certification; and

(11)    any other information required by rule or law.

TEX. R. CIV. P. 107(b).  Further, "[i]f the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return must either be verified or be signed under penalty of perjury." TEX. R. CIV. P. 107(e).

Even so, "Rule 107 does not require that the return include an address." *Silver B & Laviolette, LLC v. GH Contracting, Inc.*, No. 03-10-00091-CV, 2010 WL 4053791, at *4 (Tex.

8

App.—Austin Oct. 12, 2010, no pet.) (mem. op.) (citing *Myan Mgmt. Grp., L.L.C. v. Adam Sparks Fam. Revocable Tr.*, 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.) (citing *Garcia v. Gutierrez*, 697 S.W.2d 758, 760 (Tex. App.—Corpus Christi–Edinburg 1985, no writ))). For this reason, where personal service is accomplished, "the law is settled that listing a different address on the return and citation will not render service invalid." *Id.* (quoting *Myan Mgmt. Grp., L.L.C.*, 292 S.W.3d at 754 (quoting *Garcia*, 697 S.W.2d at 760)); *see Silver B & Laviolette, LLC*, 2010 WL 4053791, at *2.

Roland employed Smith, a private process server, to accomplish service of process. Roland's original petition alleged that M.K. could "be served via its registered agent, Cathy Ward, at her registered office address at 3414 Wesley Street, Greenville, Texas 75401 or wherever she may be found." Citation was properly issued by the clerk, and the affidavit for return of service, which was verified and sworn to by a notary public, shows that the citation was delivered along with the original petition. The affidavit for return of service shows (1) the trial court cause number and case name, (2) reflected that the case was filed in the 354th Judicial District Court of Hunt County, (3) said that the citation and original petition were served, (4) stated that the documents were received by Smith on January 14 at 12:56 p.m. for service, (5) shows that M.K. was the entity served, (6) listed the address served as "2721 TERRELL, GREENVILLE, TEXAS," (7) demonstrated that the date of service was February 17, and (8) shows that the method of service was hand delivery to Ward. The affidavit of service also contained Smith's process server certification number, issued by the Judicial Branch

9

Certification Commission.  Here, we conclude that Roland properly served the original petition on M.K., which established the trial court's jurisdiction over the entity.

As for Donna and Jeramy, Roland's amended petition alleged that they resided at "2124 FM 36 North, Farmersville, Texas 75442."  Citations for Donna and Jeramy were properly issued by the clerk on March 28, and the affidavits for return of service, which were verified and sworn to by a notary public, show that the citations were delivered along with the amended petition.  The affidavits for return of service show (1) the trial court cause number and case name, (2) reflected that the case was filed in the 354th Judicial District Court of Hunt County, (3) said that the citations and original petition were served, (4) stated that the documents were assigned to be delivered by Smith on March 31 at 10:51 a.m. for service, (5) show that Donna and Jeramy were served, (6) listed the address served as "2124 FM 36 NORTH, FARMERSVILLE, TEXAS" for Donna and "6811 CR 500, BLUE RIDGE, TEXAS" for Jeramy, (7) demonstrated that the date of service was March 31 for Donna and April 8 for Jeramy, and (8) show that the method of service was personal service by hand delivery to both Donna and Jeramy.  The affidavits of service also contained Smith's process server certification number, issued by the Judicial Branch Certification Commission.

Donna and Jeramy argue that the returns do not comply with Rule 107(b)'s fourth requirement because the returns of service do not state when Smith received the citations but only state when the citations and amended petition "w[ere] assigned to be delivered by Smith." Appellants cite to *Insurance. Co. of State of Pennsylvania. v. Lejeune*, 297 S.W.3d 254, 256 (Tex. 2009) (per curiam), a case where there was no indication as to the hour of receipt of the

10

citation. That is not the case here since the returns state that Smith was assigned to deliver a copy of the citations and amended petition on March 31 at 10:51 a.m. Even so, Donna and Jeramy argue that the returns do not show what hour she received them. Yet, "a return of service should be given a fair, reasonable, and natural construction to give effect to its plain intent and meaning." *Dole v. LSREF2 APEX 2, LLC*, 425 S.W.3d 617, 621 (Tex. App.—Dallas 2014, no pet.) (citing *Conseco Fin. Servicing Corp. v. Klein Indep. Sch. Dist.*, 78 S.W.3d 666, 673 (Tex. App.—Houston [14th Dist.] 2002, no pet.)); *see Pirate Oilfield Servs., Inc. v. Cunningham*, 631 S.W.3d 421, 432 (Tex. App.—Eastland 2021, no pet.). While the returns state that Smith was assigned to deliver a copy of the citation and amended petition on March 31 at 10:51 a.m., a reasonable construction of the return shows that Smith received a copy of the citations and amended petition on that date and hour. That is so because Smith's assignment to deliver the copies would not be complete until she received them, and service of those documents was accomplished on the same date by hand delivery to Donna on March 31 at 7:54 p.m. As a result, fair and reasonable construction of the returns shows that Smith received the copies of the citations and amended petition that she was assigned to deliver on 10:51 a.m., which was sufficient to establish the requirement of Rule 107(b).

We find that Roland properly served the amended petition to Donna and Jeramy and conclude that the trial court had jurisdiction over all parties.

## III. Roland Was Required but Failed to Serve M.K. With the Amended Petition

Next, Donna and Jeramy argue that Roland was required to serve M.K. with the amended petition. "As a general rule, a defendant who does not answer admits all material facts properly

11

alleged in the opponent's petition." *Pride v. Williams*, No. 05-11-01189-CV, 2013 WL 3788627, at *2 (Tex. App.—Dallas July 17, 2013, no pet.) (mem. op.) (citing *Bennett v. Wood Cnty.*, 200 S.W.3d 239, 241 (Tex. App.—Tyler 2006, no pet.)). "But a defendant's failure to answer admits liability only when the live pleadings have been properly served." *Id.* (quoting *Bennett*, 200 S.W.3d at 241 (citing *Caprock Constr. Co. v. Guaranteed Floorcovering, Inc.*, 950 S.W.2d 203, 204 (Tex. App.—Dallas 1997, no writ))).

"'[N]o-answer default judgments are disfavored' under Texas law." *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 920 (Tex. 2024) (per curiam) (orig. proceeding) (alteration in original) (quoting *Spanton*, 612 S.W.3d at 316). "In order for a default judgment to stand, a nonanswering party must be served with a more onerous amended petition under Rule 21a," but "[s]ervice of new citation is no longer required." *In re E.A.*, 287 S.W.3d 1, 6 (Tex. 2009) (finding that Rule 21a of the Texas Rules of Civil Procedure superseded the rule announced in *Weaver v. Hartford Accident. & Indem. Co.*, 570 S.W.2d 367 (Tex. 1978), requiring a new citation for an amended petition seeking a more onerous judgment).[6] Here, the amended petition added a new cause of action under TUFTA, against M.K., and subjected it to liability for attorney fees. *See Fidelity & Guar. Ins. Co. v. Brewery Constr. Co.*, 186 S.W.3d 571, 574 (Tex. 2006) (per curiam). As a result, it was more onerous than the original petition, and Roland was required to serve the amended petition on M.K. *See id.*; *Sw. Const. Receivables, Ltd. v. Regions Bank*, 162 S.W.3d 859, 865 (Tex. App.—Texarkana 2005, pets. denied).

---

[6]"'More onerous' is anything that exposes the defendant to additional liability." *Pride*, 2013 WL 3788627, at *2.

Under Rule 21a, M.K. could be "served by delivering a copy to the party to be served, or the party's duly authorized agent" "in person." TEX. R. CIV. P. 21a(a)(2). "A business entity is not a person capable of accepting process on its own behalf . . . ." *Albanian-Am. Cultural Ctr., Inc. v. Struge Cultural Ctr., Inc.*, No. 05-23-01134-CV, 2024 WL 4490391, at *3 (Tex. App.—Dallas Oct. 15, 2024, pet. denied) (mem. op.). Thus, "[f]or the purpose of service of process, notice, or demand," "the president and each vice president of a domestic or foreign corporation is an agent of that corporation." TEX. BUS. ORGS. CODE ANN. § 5.255(1).

Here, however, the record does not show that Roland complied with Rule 21a prior to the entry of the default judgment on his amended petition. Roland did not serve the amended petition to M.K.'s agent for service of process. Roland also did not serve the amended petition on M.K. through Donna or Jeramy. To the extent that Roland argues that M.K. had actual knowledge of the amended petition through Donna and Jeramy, "actual notice to a defendant, without proper service, is not sufficient to . . . render a default judgment against the defendant." *Verlander Enters., Inc. v. Graham*, 932 S.W.2d 259, 262 (Tex. App.—El Paso 1996, no pet.). Further, there was no certificate of service executed by either Roland or his attorney as required by Rule 21a(e). *See* TEX. R. CIV. P. 21a(e).

Because there is no evidence that M.K. was served with the more onerous amended petition, the trial court erred by entering a default judgment on the amended petition against M.K, which included joint and several liability for the TUFTA cause of action and attorney fees. *See Pride*, 2013 WL 3788627, *2 (citing *Caprock Constr. Co.*, 950 S.W.2d at 205; *Cebcor Serv.*

*Corp. v. Landscape Design & Constr., Inc.*, 270 S.W.3d 328, 332 (Tex. App.—Dallas 2008, no pet.)). As a result, we must reverse the default judgment as to M.K.[7]

## IV. We Reverse the Damages, Attorney's Fees, and the Amount of Sanctions Awarded

Next, Donna and Jeramy argue that the amount awarded in the default judgment for damages and attorney fees must be reversed. Roland has conceded the issue, and we agree that reversal is warranted. *See In re Marriage of Slanker*, No. 06-11-00029-CV, 2011 WL 5600568, at *1 (Tex. App.—Texarkana Nov. 18, 2011, no pet.) (mem. op.) ("Although the parties agree that the judgment should be reversed, such a result is not automatic merely because both parties state they desire one. Both the rules and caselaw state that a reviewing court can reverse only when there is error in the judgment of the court below." (citing *Davis v. Bryan & Bryan, Inc.*, 730 S.W.2d 643, 644 (Tex. 1987) (per curiam))).

"In cases of a no-answer default, a defaulting defendant admits all facts properly pled in the plaintiff's petition except for the amount of unliquidated damages." *In re Curnutt*, 692 S.W.3d 917, 925 (Tex. Spec. Ct. Rev. 2024); *see Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009) (per curiam) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992)). "A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual as opposed to the conclusory allegations in the plaintiff's petition and the instrument in writing." *Gregory v. Graves*, No. 06-23-00005-CV, 2023 WL 8446339, at *9 (Tex. App.—Texarkana Dec. 6, 2023, no pet.) (mem. op.) (footnote omitted) (citation

[7]This finding is dispositive of all points of error related to M.K. As a result, the remaining opinion addresses the judgment on the amended petition entered against Donna and Jeramy.

14

omitted) (quoting *Abcon Paving, Inc. v. Crissup*, 820 S.W.2d 951, 953 (Tex. App.—Fort Worth 1991, no pet.)). Here, the petition contains the following statement as to damages:

> Th[e] fire then consumed several items of valuable personal property belonging to my client including the following:

| | | |
|---|---|---|
| - | Box truck | $20,000.00 |
| - | Square hay stored in box truck | $4,000.00 |
| - | Winnebago motor home | $60,000.00 |
| - | Crown Victoria sedan | $10,000.00 |
| - | Ford Ranger pickup | $20,000.00 |
| - | Fifth-wheel camper | $10,000.00 |
| - | Two (2) John Deere 116 hay balers | $20,000.00 (total) |
| - | Two hundred cattle panels | $6,000.00 |
| - | Damage to electrical panels | $5,000.00 |
| - | Windmill generator | $2,000.00 |
| - | Six foot trailer | $1,200.00 |
| - | Damage to John Deere 5103 tractor | $5,000.00 |
| - | Labor costs to repair all damages | $80,000.00 |
| | **Total** | **$243,200.00** |

Roland did not state in his petition what the dollar amounts represented, whether purchase price, fair market value, cost of repair, or otherwise. He also does not establish how the amounts were calculated or by whom. As a result, the damages amount listed in the petition was conclusory, and the trial court was required to hear evidence on damages before awarding them. *See id.* (citing TEX. R. CIV. P. 243). Yet, the record shows that Roland failed to present proof of damages and instead relied on the itemized total in his unverified pleadings. As a result, the unliquidated damages award must be reversed.

Next, we review the trial court's award of attorney fees under the default judgment. "When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees." *Rohrmoos*

15

*Venture*, 578 S.W.3d at 484. "The Texas Supreme Court has explained that it intends 'the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed.'" *In re H.T.S.*, No. 06-23-00029-CV, 2023 WL 7381409, at *6 (Tex. App.—Texarkana Nov. 8, 2023, no pet.) (mem. op.) (quoting *Rohrmoos*, 578 S.W.3d at 498).

"[T]he fact[-]finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* (alterations in original) (quoting *Rohrmoos*, 578 S.W.3d at 498). "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* (quoting *Rohrmoos*, 578 S.W.3d at 498). Generalities about an attorney's experience, the total amount of fees, and the reasonableness of the fee "are not sufficient to support a fee-shifting award under the lodestar method." *Id.* at *7 (quoting *Rohrmoos*, 578 S.W.3d at 496).

Here, Roland's counsel simply said that "[a]ttorney's fees have come to a total" "of $9,002.86, which involves a total of $8,435.00 of billable time. $70.00 of un-billable time and a total of $567.86 in cost for that afore mentioned [sic] total of $9,002.86." Even though Roland's counsel stated that he had "considered the fair market value for attorney's fees in this area, including the Arthur Andersen Factors, as well as the Rohrmoos Factors, in determining [the attorney fees] as reasonable and necessary," that representation was conclusory and provided no

16

evidence of the reasonable hours worked and the reasonable billable rate, and fell short of the requirements of *Rohrmoos*. As a result, we sustain Appellants' complaint that the evidence of attorney fees related to the default judgment is not legally sufficient.

Lastly, the parties do not dispute that sanctions were warranted but agree that the sanctions award should be remanded to the trial court. Our review of the record shows that the amount of the sanctions award was based on a conclusory statement by counsel regarding the amount of attorney fees spent on negating Donna's and Jeramy's affidavits. In this unique circumstance, we reverse the amount of attorney fees awarded as sanctions based on the parties' agreement.

## V. Conclusion

We reverse the default judgment as to M.K. in its entirety. While we affirm the default judgment entered against Donna and Jeramy on the issue of liability, we reverse the damages and attorney fees award contained therein. Based on the parties' agreement, we also reverse the amount of sanctions awarded. We remand the case to the trial court for further proceedings in accordance with our opinion and to effectuate the parties' agreement.


Charles van Cleef
Justice


Date Submitted:     March 4, 2026
Date Decided:       March 24, 2026


17